**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CARLOS ZACARIAS, on behalf of himself and all others similarly situated,** | : |
| Plaintiff, | : : |
| v. | : Civil Action |
| | : Case No. 2:21-cv-13061-SRC-ESK |
| **STG LOGISTICS, INC. a/k/a ST. GEORGE LOGISTICS, ZJR STAFFING, LLC a/k/a ZJR STAFFING S-CORPORATION, JOSE LUIS HUGO, an Individual, and ZULMA JANET ROSADO, an Individual,** | : : : : : : |
| Defendants. | : : |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR FINAL APPROVAL OF
COLLECTIVE AND CLASS SETTLEMENT AND RELATED RELIEF**

LAW OFFICES OF MITCHELL SCHLEY, LLC
Mitchell Schley, Esq.
197 Route 18 South
South Tower, Suite 3000
East Brunswick, NJ 08816
Telephone:  732-325-0318
mschley@schleylaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY................................2

    I.     Factual and Procedural History and Settlement Discussions....................3

    II.    Summary of Settlement Terms..........................................................3

ARGUMENT

    I. Final Approval of the Settlement is Appropriate......................................7

    II. The Class Satisfies Rules 23(a) and 23(b)(3), and the Settlement Satisfy Rules 23(c) and 23(e) ...................................................................................... 5

        A. The Requirements of Rule 23(a) Are Met........................................ 5

        B. The Requirements of Rule 23(b) Are Met........................................ 7

        C. The Requirements of Rules 23(c)(2)(B) and 23(e) Are Satisfied............... 10

    III. The Court Should Grant Final FLSA Collective Action Certification.................... 11

    IV. The Proposed Settlement Is Fair, Adequate, and Reasonable ................................. 12

        A. The Court Should Presume that the Settlement Is Fair ............................. 13

        B. The *Girsh* Factors Favor Final Settlement Approval................................. 15

            1. *Girsh* Factor 1: Complexity, Expense, and Duration of Litigation ....... 15

            2. *Girsh* Factor 2: Reaction of the Class to the Settlement ......................... 16

            3. *Girsh* Factor 3: Stage of Proceedings and Amount of Discovery Completed......................................................................... 17

            4. *Girsh* Factors 4, 5, and 6: Risks of Establishing Liability and Damages, and Risks of Maintaining a Class Action Through Trial ................................ 17

            5. *Girsh* Factors 7, 8, and 9: Reasonableness of Recovery in Settlement .. 18

        C. The Proposed Settlement Is Fair and Reasonable under the FLSA.......... 19

    V. The Court Should Approve Class Counsel's Request for Attorney's Fees............... 21

    VI. Plaintiff's Proposed Service Award Is Reasonable ................................................. 21

CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ...................................................5, 8, 9

*Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ...........................................15

*Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003)........................17

*Bredbenner v. Liberty Travel, Inc.*, No. Civ. 09-905, 09-1248, 09-4587 (MF), 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011)...........................................................................................................11, 12, 20, 21

*Brown v. Progressions Behavioral Health Servs., Inc.*, 2017 WL 2986300 (E.D. Pa. July 13, 2017) .....................22

*Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) ...............................................15

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) ........................................13

*D.R. by MR. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997) .....................................21

*DeMaria v. Horizon Healthcare Servs., Inc.*, No. 11-7298 (WJM), 2015 WL 3460997, at *9 (D.N.J. June 1, 2015)..8

*Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)................................................................6

*Farris v. J.C. Penney, Inc.*, 176 F.3d 706, 711 (3d Cir. 1999) .................................................20, 21

*Hall v. Best Buy Co.*, 274 F.R.D. 154, 167, n. 68 (E.D. Pa. 2011) ..................................................11

*In re Amtrak Train Derailment in Philadelphia, Pa.*, No. 15-MD-2654, 2016 WL 1359725, at *2 (E.D. Pa. Apr. 6, 2016).......................................................................................................................5

*In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005) .....................................................6, 7

*In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995)...........................................13, 14, 16, 17

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06–3202, 2009 WL 2137224, at *5 (E.D. Pa. July 16, 2009).......................................................................................................................8

*In re Prudential Ins. Co. Sales Practice Litig. Agent Actions*, 148 F.3d at 308–09......................4, 5, 9, 10

*In re Remeron End-Payor Antitrust Litig.*, No. 02-Civ-2007, 2005 WL 2230314, at *11–12 (D.N.J. Sept. 13, 2005)8, 9

*Jamison v. Butcher & Herrerd*, 68 F.R.D. 479, 481–82 (E.D. Pa. 1975) ............................................15

*Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 330 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999) ....13

*Lenahan v. Sears, Roebuck & Co.*, No. 02-CIV-0045, 2006 WL 2085282, at *16 (D.N.J. 2006) ...........................19

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987) ....................................................11, 12

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) ...........................13, 19, 20

*Morales v. PepsiCo, Inc.*, Civ. No. 11-6275, 2012 WL 870752, at *1 (D.N.J. Mar. 14, 2012)...........................20

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 311 (E.D. Pa. 2012) .....................................................16

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).....................................................6

*Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)..............................................................5

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 (3d Cir. 2011)..................................................5, 6, 8

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011) .....................................................4, 5

*Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666 (WHW)(CLW), 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015)...........................................................................................................................13

*Davis v. Essex Cnty.*, No. 14-cv-l122 (CCC-JBC), No. 14-CV-1122 (CCC-JBC), 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015)...........................................................................................................12

## RULES

Fed. R. Civ. P. 23....................................................................................................................passim

N.J.S.A. 34:11-56a25...................................................................................................................18

## PRELIMINARY STATEMENT

By this Unopposed Motion   ("Motion"), Plaintiff Carlos Zacarias ("Plaintiff" or "Zacarias") on behalf of himself and all others similarly situated, respectfully seeks, for settlement purposes: (a) final certification of a Rule 23 class under the New Jersey Wage and Hour Law ("NJWHL"); (b) final certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); (c) final approval of the Parties' settlement, as embodied in the Parties' Settlement Agreement & Release, (**ECF No. 55-1**) as fair and reasonable (the "Settlement"), which the Court preliminarily approved by Order dated October 17, 2023 (**ECF No. 66**); (d) final appointment of Plaintiff as Class Representative; (e) final appointment of Plaintiff's Counsel as Class Counsel; (f) final appointment of Rust Consulting, Inc. ("Rust")  as Settlement Administrator; and (g) an order directing Rust to mail the settlement payments to the Class Members. If granted final approval by this Court, the Settlement would resolve bona fide disputes on a class-wide basis.

As set forth in the Complaint (**ECF No. 1**), Zacarias brought his claims as proposed class and collective actions on behalf of himself and all similarly situated employees and former employees of Defendants STG Logistics, Inc. ("STG"), ZJR Staffing Agency, Jose Luis Hugo and Zulma Janet Rosado ("ZJR") (collectively, "Defendants") to recover unpaid wages pursuant to the FLSA and the NJWHL. There are three opt-in Plaintiffs in the case. (**ECF Nos. 25-27**)

Following document exchange and discussions between counsel, the Parties engaged in a two day mediation with a court-appointed mediator Jennine DiSomma, Esq., and subsequent settlement discussions which have led to a comprehensive and complete resolution of all claims. Defendants deny and dispute liability and damages, but in resolution of these claims have agreed to pay $300,000.00 which, after legal fees and costs, administration fees, and service award, will

1

be disbursed to Class Members, on a pro-rata basis equal to the percentage of actual damages to which each Class Member is entitled.

The Settlement is fair, reasonable, adequate, and the product of arm's length negotiations between experienced counsel. Accordingly, for the reasons set forth in further detail below, the Court should grant this Motion in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.    Factual and Procedural History and Settlement Discussions

On June 28, 2021, Carlos Zacarias, a warehouse worker, filed a complaint against Defendants seeking to recover alleged unpaid overtime wages on behalf of himself and all class members as a putative collective and class action under the FLSA and NJWHL. The putative collective and class includes warehouse workers directly employed by ZJR, an employee staffing agency, which assigned them to work at the STG warehouse.

The complaint also alleges that ZJR and STG are jointly liable for the alleged violations as a joint employer within the meaning of the FLSA and NJWHL. Also named as Defendants are Jose Luis Hugo and Zulma Janet, alleged owners of ZJR, who are alleged to be personally and individually liable within the meaning of the FLSA and NJWHL. Defendants deny all liability.

On September 30 and December 9, 2022, the Parties engaged in court-ordered mediation with Jennine DiSomma, Esq. and, thereafter, the Parties agreed upon terms of settlement. Those terms are embodied in the Settlement Agreement and accompanying Exhibits, which the Parties now submit to the Court for final approval.

The Plaintiff filed a Notice of Motion for Preliminary Approval, a Declaration of Plaintiff's Counsel with supporting documents, an Unopposed Motion for Preliminary Approval of Class Settlement, and Notice, Consent and Reference of a Dispositive Motion to a Magistrate Judge. (**ECF Nos. 57**, 60 and 55-1 to 55-7, 61, 65) On October 5, 2023, the Court granted the Plaintiff's

2

Motion and thereafter set a Fairness Hearing for February 28, 2024. (**ECF No. 66**) The Initial Notice was sent to Class Members on November 3, 2023. (**Ex. 2, Gantt Decl.**) After the Notices were sent out in English and Spanish, Plaintiff received numerous calls from individuals who said they had been employed by ZJR and assigned to the STG warehouse, had heard about the settlement, but did not receive a Notice. Plaintiff checked their names with ZJR and STG and learned that they were missing from the list of Class Members provided by ZJR. This total number came to 18 and the Parties had Rust send out a Notice to them. In addition, as the settlement payment for each class member is pro-rata based on the length of employment, the settlement fund allocations had to be adjusted to account for the additional 18 class members. Accordingly, the settlement allocation sheet submitted with this Motion (**Ex. 6**) varies slightly from the settlement allocation sheet submitted with Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement (**ECF No. 55-7**).

## II.    Summary of Settlement Terms

The Settlement Agreement fully resolves all wage-and-hour claims under the FLSA and NJWHL. The Settlement Agreement provides for a total award of $300,000.00 (the "Settlement Liability Sum") that will be disbursed after deductions to Class Members, without the need for them to file a claim, on a pro-rata basis equal to the percentage of actual damages to which each Class Member is entitled. The Settlement Liability Sum covers any Court approved service award to Named Plaintiff of $5,000.00. The Settlement Liability Sum also covers the cost of settlement administration, legal fees, and legal costs.

## ARGUMENT

## I.    Final Approval of the Settlement Is Appropriate

Federal courts, including the Third Circuit, favor resolution of collective and class action lawsuits by settlement. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–595 (3d Cir.

2010) (recognizing a "strong presumption in favor of voluntary settlement," which is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). This is because by reaching a reasonable settlement prior to dispositive motions or trial, parties to class action litigation avoid significant expense and delay, and instead ensure recovery for the class. *Ehrheart,* 609 F.3d at 594–95 ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.").

It is well settled that approval of a proposed class action settlement is subject to the discretion of the district court. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) ("The ultimate decision whether to approve a proposed settlement under this standard 'is left to the sound discretion of the district court.'" (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998))); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ("The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court."). In exercising its discretion, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

For the reasons set forth in further detail below, the Court should grant final certification of a Rule 23 Class and an FLSA Collective Action for settlement purposes only, find that the

Settlements are adequate, fair, and reasonable, grant Class Counsel's requests for attorney's fees and costs, and grant Plaintiff's request for a service award.

## II.    The Class Satisfies Rules 23(a) and 23(b)(3), and the Settlements Satisfy Rules 23(c) and 23(e)

A settlement class should be certified if it meets the requirements of Rule 23(a) and 23(b). *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re Prudential Ins. Co. Sales Practice Litig. Agent Actions*, 148 F.3d at 308–09; *In re Amtrak Train Derailment in Philadelphia, Pa.*, No. 15-MD-2654, 2016 WL 1359725, at *2 (E.D. Pa. Apr. 6, 2016) ("[T]he Third Circuit extensively reviewed class action law and the use of class action settlements, and found that the certification of a settlement class can be appropriate, provided that the court ensures that the class meets the requirements of Rule 23."). A class may be certified for settlement purposes even if it might not satisfy every requirement of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (reasoning settlement-only class would not present intractable management problems "for the proposal is that there be no trial"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 (3d Cir. 2011) (same). The Settlements must also satisfy the requirements of Rules 23(c) and (e).

### A.    The Requirements of Rule 23(a) Are Met

Rule 23(a) establishes the four requirements for class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Each of these requirements is satisfied here. First, numerosity requires that "the class [be] so numerous that joinder of all members is impracticable." *Id.* 23(a)(1). When the class size exceeds 40 members, numerosity is generally satisfied. *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Here, the Class consists of 245 individuals. Accordingly, Plaintiff asserts that numerosity has been met.

Second, commonality examines whether "there are questions of law or fact [that are] common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality is satisfied where common

questions generate common answers 'apt to drive the resolution of the litigation.'" *Sullivan*, 667 F.3d at 300 (quoting *Dukes*, 131 S. Ct. at 2551). The commonality standard of Rule 23(a)(2) will be satisfied if the Plaintiff "share[s] at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).

Plaintiff contends that Defendants failed to him and all Class Members overtime wages. In the settlement context, these shared issues of fact and law meet the commonality requirement. *See, e.g., Singleton*, 2014 WL 3865853, at *4 (finding commonality requirement met in off-the-clock wage and hour suit where common policies applied to all class members in different locations); *Craig v. Rite Aid Corp.*, 2013 WL 84928, at *6 (M.D. Pa. Jan. 7, 2013) (finding class of assistant managers met commonality requirement by alleging they were all misclassified and denied overtime pay).

Third, to satisfy the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A representative party's claim is typical if it presents "common issues of law and fact that justify class treatment. . . ." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985). The typicality requirement is often satisfied for the same reason the commonality requirement is satisfied. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005).

Here, Plaintiff Zacarias alleges all Class Members worked for Defendants as warehouse workers who performed the same or similar duties at the same location and were all not paid overtime wages. This means Plaintiff's claims are typical of the claims of the proposed Class Members. *See, e.g., Singleton*, 2014 WL 3865853, at *4 (finding typicality requirement satisfied where representative party and class alleged "the exact same type of injury allegedly suffered as a

6

result of the [Defendant's] conduct: underpayment for the work performed before and after [a shift]").

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating this requirement, courts consider: (1) whether the interests of the named plaintiff are sufficiently aligned with the interests of class members; and (2) whether plaintiff's counsel is qualified to represent the class. *In re Cmty. Bank*, 418 F.3d at 303. Here, Plaintiff has demonstrated through his efforts on behalf of the Class Members that he shares an interest in obtaining redress from Defendants for alleged violations of the FLSA and NJWHL. Further, Plaintiff alleges that Defendants failed to pay the Class Members overtime wages. Therefore, Plaintiff shares the same interest with the proposed Class Members and should be appointed Class Representative.

As is set forth in the Declaration of Mitchell Schley, Class Counsel has experience litigating and settling other wage and hour class actions. In consultation with Plaintiff, Class Counsel has worked diligently and vigorously to pursue the Class's claims to maximize recovery, as well as to negotiate and obtain the favorable Settlement presented in this application. Class Counsel reviewed the payroll data and investigated public and non-public sources relating to the claims alleged; researched the applicable law with respect to the claims alleged and Defendants' potential defenses; undertook arm's length negotiations; and devised a plan to allocate the benefits of the Settlement that will ensure that all Class Members are treated fairly and reasonably.

### B. The Requirements of Rule 23(b) Are Met

After satisfying the requirements of Rule 23(a), a class may be certified if one of the three subsections of Rule 23(b) is met. Fed. R. Civ. P. 23(b). Here, Plaintiff asserts that certification is appropriate under Rule 23(b)(3), which requires (1) that common questions of fact or law predominate over individual questions; and (2) that a class action be a superior method to

adjudicate the controversy fairly and efficiently. *Id.* 23(b)(3). Since certification is occurring in a settlement context, there will be no trial, and thus the Court need not make the manageability finding that otherwise is required under Rule 23(b)(3).

Predominance generally "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. "[T]he focus of the predominance inquiry is on whether the defendants' conduct was common as to all of the class members, and whether all of the class members were harmed by the defendants' conduct." *Sullivan*, 667 F.3d at 298. Although common questions must outweigh those of individual class members, the existence of individual questions of fact does not *per se* preclude class certification. *In re Remeron End-Payor Antitrust Litig.*, No. 02-Civ-2007, 2005 WL 2230314, at *11–12 (D.N.J. Sept. 13, 2005) (citing *Esienberg*, 766 F.2d at 787). For example, courts have concluded that "the need to determine damages on a claim-by-claim basis does not undermine [] predominance . . . ." *DeMaria v. Horizon Healthcare Servs., Inc.*, No. 11-7298 (WJM), 2015 WL 3460997, at *9 (D.N.J. June 1, 2015).

Here, Plaintiff asserts that predominance is satisfied for settlement purposes because he alleges that Defendants had a common policy or practice of failing to pay Class Members proper overtime for all hours worked in excess of 40 in a workweek. *See, e.g.*, *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06–3202, 2009 WL 2137224, at *5 (E.D. Pa. July 16, 2009) (finding predominance met where plaintiffs alleged common course of conduct based on defendants' employment policies).

The superiority analysis considers three factors: (1) Class Members' individual interest in controlling the prosecution of the action; (2) the extent of similar litigation previously commenced

by members of the class; and (3) the desirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, as typical Class Members would have little interest in or capability of prosecuting separate actions because each Class Member stands to recover damages that may not support an individual action. See *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *Varacallo*, 226 F.R.D. 207, 233 (D.N.J. 2005) ("[S]ince the financial losses of most of the Class Members is relatively small, very few would have an interest or ability to pursue their own individual case."). The fact that no class member ever sought to bring their own action demonstrates that the potential recoveries for each class member were not sufficiently large to justify the initiation of legal action. In any event, Class Members have had an opportunity to opt-out of the Settlement, as set forth in the Settlement Notice. (**ECF No. 289, Ex. 1**).

Therefore, Rule 23(b)(3) is satisfied for settlement purposes.

Class Counsel is not aware of duplicative actions filed by any Class Member. Courts have found that this demonstrates a lack of interest in pursuing separate claims. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 316 (stating the "relatively small number of individual suits pending against Prudential indicated that the individual policy holders lack a compelling interest to control the prosecution of their own claims"). Moreover, Plaintiff asserts that in contrast to the inefficiency of prosecuting a large number of individual lawsuits, resolving all Class Members' claims in this single action for settlement purposes allows for substantial preservation of resources. *In re Remeron*, 2005 WL 2230314 at *12. Therefore, Plaintiff asserts that Rule 23(b)(3) is satisfied for settlement purposes.

**C.      The Requirements of Rules 23(c)(2)(B) and 23(e) Are Satisfied**

Federal Rule of Civil Procedure 23(c)(2) "requires notice to be given to all potential members of a Rule 23(b)(3) class informing them of the existence of the class action, the requirements for opting out of the class and/or entering an appearance with the court, and the applicability of any final judgment to all members who do not opt out of the class." *In re Prudential*, 148 F.3d at 326; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (reasoning notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afforded them an opportunity to present their objections"). Rule 23(e) further requires notices to "summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'" *In re Prudential*, 148 F.3d at 326–27. Notices must be disseminated in a manner that is "practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Mailing of notices to each class member satisfies this requirement. *See Eisen*, 417 U.S. at 175.

The Notice Materials thoroughly apprised Class Members of all information needed for them to make an informed decision regarding participation in, exclusion from, or objection to the Settlement because they set forth: (1) the nature of the action, (2) a definition of the class certified, (3) the class claims, issues, and defenses, (4) that a Class Member may enter an appearance through an attorney if the member so desires, (5) that the court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of class judgment on members under Rule 23(c)(3).

The Notice Materials also informed each Class Member of his or her individual Settlement Share, the settlement amount and how each Settlement Share was calculated, the deadlines for

responding to the Notice, the place of the Final Approval Hearing, and how to object to the Settlement. *Id*. The Notice Materials informed Class Members how to obtain a copy of the full Stipulation and other documents in the Action. *Id*. In case any information was unclear, the Notice advised Class Members to direct any "additional questions" or requests for "additional information" to Class Counsel, whose contact information was provided. *Id*. Some Class Members made use of this mechanism and communicated by telephone with the Class Counsel.

The Notice Materials meet the basic requirements of Rules 23(c) and (e), see, e.g., *Hegab*, 2015 WL 1021130, at *10. Moreover, the Notice Materials provide all information necessary under the FLSA for Class Members to make an informed decision as to whether to participate in the Settlement by opting in as a Claimant. *See, e.g.*, 29 U.S.C. § 216(b).

Finally, the Claims Administrators initially mailed notices to all 227 Class Members. In addition, 18 individuals came forward and advised they believed they should be included as Class Members. The Parties agreed to include these individuals and notice was sent to these 18 employees after they identified themselves and were confirmed by the Parties. (**Ex. 2, Gantt Decl.**)

Therefore, the Requirements of Rules 23(c)(2)(B) and 23(e) are satisfied.

## III.    The Court Should Grant Final FLSA Collective Action Certification

The FLSA Collective Action should be finally certified, for settlement purposes, for the reasons set forth above under the more stringent requirements of Rule 23 certification. *See supra* Section IV; *Hall v. Best Buy Co.*, 274 F.R.D. 154, 167, n. 68 (E.D. Pa. 2011) ("By meeting the more stringent requirements of Rule 23, the class likewise may be certified as a collective action."). Courts in the Third Circuit apply the three "*Lusardi* factors" to determine whether to certify an FLSA opt-in class: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Bredbenner v. Liberty Travel, Inc.*, No.

11

Civ. 09-905, 09-1248, 09-4587 (MF), 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011) (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988)). "Because the analysis required for final certification largely overlaps with class certification analysis under Federal Rule of Civil Procedure 23(a), the Court need only address the *Lusardi* factors in passing" for settlement purposes here. *Id.* at *17 (internal quotations and alterations omitted).

As set forth above, *supra* Section II, Defendants' alleged conduct challenged in the Action, regarding alleged failure to fully pay overtime to its Class Members, based on Plaintiff Zacarias's understanding of the workplace and Class Counsel's investigation. *Bredbenner*, 2011 WL 1344745, at *17. The policies and practices of Defendants are alleged to have happened at Defendants' New Jersey locations. Accordingly, Plaintiff Zacarias asserts there can be no individualized defenses against any one of the Class Members. The Court should grant final certification of the collective action. *See, e.g.*, *Singleton*, 2014 WL 3865853, at *3.

Plaintiff further asserts that fairness and procedural considerations tip decidedly in favor of certifying the FLSA Collective Action for settlement purposes. The Notices of Class Action Settlement explain each Class Member's rights, including the rights to opt-out of the class or object to the Settlement, and how Settlement Shares were to be calculated (i.e., based on work period and pay rate).

In sum, the Court should finally certify a collective action under the FLSA for settlement purposes.

## IV.    The Proposed Settlement Is Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) requires class action settlements to be approved by a district court. Fed. R. Civ. P. 23(e). Likewise, the FLSA generally requires settlements to be approved by the district court or the Department of Labor. *See, e.g.*, *Davis v. Essex Cnty.*, No. 14-

12

cv-l122 (CCC-JBC), No. 14-CV-1122 (CCC-JBC), 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).

The Court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and, if a settlement reflects "a reasonable compromise," the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. In reviewing a proposed class action settlement, courts consider whether it is "fair, adequate, and reasonable." *Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 330 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999); *In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995). In this review, courts are mindful that settlement is the preferred method for resolving class action lawsuits. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535.

In the class action context, settlement approval involves a two-step process consisting of: (1) preliminary approval of the settlement and notice to all class members; and (2) a final fairness hearing. *See Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666 (WHW)(CLW), 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015). The Court granted preliminary approval to the Settlements on September 23, 2021 (**ECF No. 291**), and the parties jointly seek final approval.

The Parties' Settlements are entitled to a presumption of fairness under *In re Cedant* and its progeny, and the Settlements satisfy the *Girsh* factors. Therefore, the Court should grant final approval.

## A.    The Court Should Presume that the Settlement Is Fair

A class action settlement is presumptively fair if: "(1) the negotiations occurred at [arm's] length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Dominguez*, 2017 WL

13

2495406, at *2 (quoting *In re Cedant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)); *see also In re Warfarin*, 391 F.3d at 535; *In re Gen. Motors*, 55 F.3d at 785.  Here, these factors compel a presumption of fairness.

First, the proposed Settlement is the product of extensive arm's length negotiations. As is explained in more detail below, the Parties calculated Defendants' highest potential exposure after exchanging documents and other data relevant to each one of the Class Members. After numerous oral and written communications, and assistance by a mediator, the Parties reached a settlement. Plaintiff estimates that the settlement constitutes approximately 50% of Defendants total exposure, including liquidated damages.

Second, there has been sufficient discovery. Defendants produced to Plaintiff payroll and time records for all the Class Members during the relevant time period, and Plaintiff calculated the unpaid overtime.

Third, the Parties' attorneys are competent and experienced in wage and hour collective and class actions. Class Counsel, Mitchell Schley, is a well-respected New Jersey and New York City labor and employment lawyer who has litigated dozens of wage and hour cases on behalf of employees. *See* detail in Schley Decl. STG is represented by Littler Mendelson P.C., and, specifically, their counsel Amber Spataro and Dimitrios Markos, have extensive experience defending wage and hour class actions. ZJR is represented by Michael Chong who also has extensive experience in wage and hour class actions. Accordingly, the Parties' attorneys have the experience necessary to conduct a fair and adequate assessment of the strengths and weaknesses of their clients' respective claims and defenses in the Action and, based on that assessment, to recommend a reasonable settlement. Because of this and Class Counsel's close involvement in the litigation of the Action, Class Counsel's recommendation of settlement approval is entitled to

14

significant weight. *See, e.g., Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class."); *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) (citing *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481–82 (E.D. Pa. 1975) (counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses")).

Fourth, the Court should take note that there have been no objections to the Settlements after the Notice was sent to the Class Members. *See* (**Ex. 2, Gantt Decl.**). This demonstrates that the Class Members viewed the Settlements as fair.

**B.    The *Girsh* Factors Favor Final Settlement Approval**

At the final approval stage, the Court further assesses the fairness and reasonableness of the proposed settlement under the *Girsh* factors:

1) the complexity, expense, and likely duration of the litigation;
2) the reaction of the class to the proposed settlement;
3) the stage of the proceedings, and amount of discovery completed;
4) risks of establishing liability;
5) risks of establishing damages;
6) risks of maintaining a class through trial;
7) the ability of defendants to withstand a greater judgment;
8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 156–57 (3d Cir. 1975). Analysis of the *Girsh* factors with regard to the instant Action demonstrates that the Court should grant final approval.

**1.    *Girsh* Factor 1: Complexity, Expense, and Duration of Litigation**

The issues in the Action are complex and ultimately rest on contested issues of fact. For example, Defendants deny that they owe Class Members unpaid overtime and Defendants deny that their actions were willful and in bad faith such that three-year statute of limitations and

liquidated damages is warranted under the FLSA. In addition, Defendants deny liability under the NJWHL, deny that they are a joint employer, and deny personal liability. These issues can only be resolved through prolonged discovery, including numerous depositions of managers and potential Class Members, dispositive motion practice, and ultimately trial and possible appeal, over many years.

By reaching a mutually acceptable settlement prior to class and collective action certification briefing, depositions, dispositive motions, a trial, and possible appeals, the Parties have reduced their risks and avoided significant expense and delay. *See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 311 (E.D. Pa. 2012) (finding first *Girsh* factor in favor of settlement approval where approval was sought before dispositive motion practice). The first *Girsh* factor therefore weighs in favor of preliminary approval.

### 2. *Girsh* Factor 2: Reaction of the Class to the Settlements

The lack of objections or requests to be excluded by any Class Member indicates approval of the Settlements. *See, e.g. In re Cedant Corp.*, 264 F.3d at 235 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of Settlement . . . ."); *In re Gen. Motors Corp.*, 55 F.3d at 812 ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993)); *Hegab*, 2015 WL 1021130, at *6 ("The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the settlement class generally and overwhelmingly approves the settlement."). Accordingly, the second *Girsh* factor weighs in favor of final approval.

16

    **3.**    *Girsh* **Factor 3: Stage of Proceedings and Amount of Discovery Completed**

The parties must have an "adequate appreciation of the merits of the case before negotiating." *In re Cedant Corp.*, 264 F.3d at 235 (quotation marks omitted). The Parties exchanged documents and substantial data. This information is necessary to calculate damages in this Action and to determine whether class-wide litigation may be possible, as is discussed below. In light of the discovery exchanged, the Parties were able to negotiate at arm's length with "a clear view of the strengths and weaknesses of their case." *Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003) (internal citation and quotation marks omitted). Accordingly, the third *Girsh* factor weighs in favor of preliminary approval.

    **4.**    *Girsh* **Factors 4, 5, and 6: Risks of Establishing Liability and Damages, and Risks of Maintaining a Class Action Through Trial**

Continuing the Action would expose the Parties to significant litigation risks highlighted in the fourth, fifth, and sixth *Girsh* factors, all of which militate in favor of granting preliminary settlement approval. *See, e.g.*, *Singleton*, 2014 WL 3865853, at *6 (listing risks of proceeding with class action involving off-the-clock wage claims). Although the Parties believe that they have strong claims or defenses, they recognize that they also face significant litigation risks and costs should the Action continue.

The parties have sharp disputes, which involve significant factual and legal issues. Given the numerous factual disputes, which go both to the merits of the Action and to the calculation of damages, the Court should allow the Parties to "yield[] the[ir] highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp.*, 55 F.3d at 806. The Parties dispute whether certification of the class and final certification of the collective should be granted, outside of certification for settlement purposes. If litigation were to proceed, the Parties would engage in what could be lengthy motion practice surrounding the disputed issues of class and collective

17

certification and liability which would very likely increase the time, expense, and uncertainty involved for all Parties.

Accordingly, the fourth, fifth, and sixth *Girsch* factors weigh heavily in favor of final approval.

### 5.    *Girsh* Factors 7, 8, and 9: Reasonableness of Recovery in Settlement

The settlement amount is reasonable in light of the highest potential recovery and the litigation risks discussed above (eighth and ninth *Girsh* factors), even though Defendants could probably withstand a higher judgment (the seventh *Girsh* factor).  Thus, the seventh, eighth, and ninth *Girsh* factors weigh strongly in favor of final approval.

The following is true of the damages calculations:

- The calculations are based on time and payroll records and invoices.

- The calculations used the full liability period available under the NJWHL prior to the filing of the action. *See* N.J.S.A. 34:11-56a25.1. Here, the relevant liability period begins on August 6, 2017 to July 1, 2022, when ZJR ceased providing labor to STG.

- It is assumed for settlement purposes that the Action would be conditionally and finally certified as an FLSA collective action, which Defendants dispute.

- It is assumed for settlement purposes that the Action would be certified as a Rule 23 Class Action, which Defendants dispute.

The total number of Class Members, 245, needs an explanation. During the liability period, the ZJR workforce assigned to the STG warehouse was not stable and experienced a high turnover. Thus, for example, a total of 127 ZJR Class Members worked at STG fewer than 12 weeks and a

total of 171 ZJR Class Members worked at STG fewer than 26 weeks. Accordingly, a large number of Class Members are due a very small recovery.

In light of the uncertainties and costs associated with protracted litigation, Defendants agreed to settle the Action for a total of $300,000.00, which represents 50% of the total liability including liquidated damages, of $600,000. This is a fair and appropriate amount, as discussed above. Moreover, the Settlement Sums represent a fair value in light of the attendant risks of litigation, even though recovery could be greater if the class action could be maintained, were 100% successful at trial, and survived through appeal. If Defendants prevailed on decertifying the class, Plaintiff would have to litigate his claims alone and would not recover the Settlement Payment. Similarly, if Defendants successfully disputed liability, Plaintiff would face no recovery.

It is well settled that settlement of a class action may be appropriate even where the settlement is only a percentage of the ultimate total exposure should the case be won at trial. *See Lenahan v. Sears, Roebuck & Co.*, No. 02-CIV-0045, 2006 WL 2085282, at *16 (D.N.J. 2006) (approving $15 million settlement, though maximum exposure at trial could have been as high as $104 million, because of the "magnitude of the risks in litigation"). In examining reasonableness, courts do not speculate about the highest possible recovery. Rather, courts consider the risk of little or no recovery at all. *See Varacallo*, 226 F.R.D. at 240 ("This Settlement yields substantial and immediate benefits, and it is reasonable in light of the best possible recovery and the attendant risks of litigation—little or no recovery at all."). In light of the risks and assumptions discussed above, and the significant recovery here, the eighth and ninth *Girsh* factors weigh in favor of preliminary approval.

### C.    The Proposed Settlement Is Fair and Reasonable under the FLSA

Whether to approve the settlement of an FLSA collective action is within this Court's discretion. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("[W]e allow the district court to approve

the settlement in order to promote the policy of encouraging settlement of litigation."). In making

this determination, the Court should be "mindful of the strong presumption in favor of settlement."

*Morales v. PepsiCo, Inc.*, Civ. No. 11-6275, 2012 WL 870752, at *1 (D.N.J. Mar. 14, 2012) (citing

*Farris v. J.C. Penney, Inc.*, 176 F.3d 706, 711 (3d Cir. 1999)).

 "To approve a settlement resolving claims under the FLSA, the Court must scrutinize its

terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 WL

1344745, at *18 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). The adversarial nature of a

litigated FLSA case is typically an adequate guarantor of fairness. *Lynn's Food Stores, Inc.*, 679

F.2d at 1354. A proposed settlement should be approved if it "represents a 'reasonable compromise

of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's

overreaching.'" *Bredbenner*, 2011 WL 1344745, at *18 (quoting *Lynn's Food Stores, Inc.*, 679

F.2d at 1354).

 The Parties dispute: (1) whether Defendants violated the FLSA and NJWHL by failing to

pay all Class Members overtime allegedly due; (2) whether Defendants should be assessed

liquidated damages; (3) whether Plaintiff can maintain a collective or class action on behalf of all

allegedly similarly situated employees; (4) whether Defendants are joint employers under the

FLSA; and (5) whether there is personal liability for the ZJR owners.  Thus, there are bona fide

disputes between the Parties that will be resolved through the proposed Settlement. *Bredbenner*,

2011 WL 1344745, at *18 (approving settlement resolving dispute about overtime pay, because

"'disagreements over hours or compensation due' clearly established a bona fide dispute," and the

"institution of a federal court litigation" coupled with "aggressive prosecution and strenuous

defense demonstrates the palpable bona fides of this dispute").

In light of the uncertainties and costs associated with protracted litigation, Defendants agreed to settle the Action for a total $300,000.00. The Settlement Sums are a fair value in light of the risks of litigation noted above, even though recovery could be greater if the collective action could be maintained and were 100% successful at trial and survived appeals. Accordingly, the proposed Settlement is fair and reasonable.

Finally, the Third Circuit recognizes a strong public policy in favor of settlements, since "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by MR. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). The Settlement here is consistent with that policy because it resolves a pending action on behalf of a potential opt-in class and avoids a trial and likely appeals. Because the Settlement represents a fair resolution of a bona fide dispute, public policy weighs heavily in favor of its approval. *Id.*; *see also Farris*, 176 F.3d at 711.

## V.    The Court Should Approve Class Counsel's Request for Attorney's Fees

This issue is addressed in the Declaration of Class Counsel Mitchell Schley.

## VI.    Plaintiff's Proposed Service Award Is Reasonable

Service or incentive awards "are fairly common in class action lawsuits involving a common fund for distribution to the class." *Bredbenner*, 2011 WL 1344745, at *22. The purpose of incentive awards is to "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of the class action litigation,' and to 'reward the public service' for contributing to the enforcement of mandatory laws." Id. (internal citations omitted).

The service award requested here, $5,000.00, represents a tiny fraction (0.016%) of the Gross Liability Settlement Payment of $300,000.00, and is well within the range of service awards regularly approved in class actions by courts in the Third Circuit. *See, e.g., id.* at *23 (collecting

cases in which class representatives were awarded between $3,000.00, on the low end, to $30,000.00, on the high end, as service awards).

Zacarias, the sole named Plaintiff, was directly involved in the Litigation since before its filing by providing all facts necessary for the drafting of the Complaint, such as the work duties he and other Class Members performed and Defendants' alleged pay practices. After the Complaint was filed, he took the burden associated with being the only named Plaintiff by, for example, assisting with discovery matters and assisting Class Counsel with regard to the settlement. His involvement was instrumental in obtaining the proposed Settlement and should receive the service award requested. *See, e.g., Brown v. Progressions Behavioral Health Servs., Inc.*, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) (approving $10,000.00 service award to each plaintiff involved in commencing the action and "willing to assume the risk associated with being a named plaintiff in a class action").

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and enter the Proposed Final Approval Order.

Respectfully submitted,

/s/ Mitchell Schley
Mitchell Schley, Esq.
LAW OFFICES OF MITCHELL SCHLEY, LLC
mschley@schleylaw.com
197 Route 18 South
South Tower, Suite 3000
East Brunswick, NJ 08816
Telephone:  732-325-0318
*Attorneys for Plaintiff*

Dated:    February 21, 2024